## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

DANIEL K. FELTEN,
       Appellant,

      v.

OFFICE OF PERSONNEL
  MANAGEMENT,
       Agency.

DOCKET NUMBER
DE-844E-20-0195-I-1

DATE:  December 11, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Benjamin E. Wick</u>, Esquire, and <u>Holly V. Franson</u>, Esquire,
  Denver, Colorado, for the appellant.

<u>Linnette L. Scott</u>, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which affirmed the final decision of the Office of Personnel Management (OPM) denying his Federal Employees' Retirement System (FERS) disability retirement application.  For the reasons discussed below, we GRANT the appellant's petition

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

for review, REVERSE the initial decision and OPM's final decision, and ORDER OPM to award a disability retirement annuity to the appellant.

## BACKGROUND

The appellant was a GS-13 Accountant for the Department of Veterans Affairs (DVA), covered under FERS. Initial Appeal File (IAF), Tab 7 at 5. On August 6, 2016, the appellant was arrested off-duty for possession of controlled substances, a charge to which he later pled guilty. IAF, Tab 19 at 9-33. It appears that the DVA was unaware of the matter until sometime later, and the appellant continued working in his position, earning a summary performance rating of "fully successful" for fiscal year 2017. IAF, Tab 13 at 5-9. Subsequently, the DVA learned of the appellant's arrest and conviction, and it proposed to remove him based on a charge of conduct unbecoming. *Id*. at 33-34. The appellant was removed effective May 18, 2018.[2] IAF, Tab 7 at 5-6.

On or about December 10, 2018, the appellant filed an application for disability retirement based on conditions of depression, anxiety, attention deficit hyperactivity disorder, osteoarthritis,[3] and posttraumatic stress disorder. IAF, Tab 6 at 62-75. On May 23, 2019, OPM issued an initial decision denying the appellant's application on the basis that the appellant failed to show that he was disabled for disability retirement purposes during the time of his employment. *Id*. at 54-59. The appellant requested reconsideration, and on March 5, 2020, OPM issued a final decision affirming its initial decision. *Id*. at 5-44.

The appellant timely filed the instant Board appeal, challenging OPM's determination. IAF, Tab 1 at 4-5. He waived his right to a hearing. *Id*. at 2. After the close of the record, the administrative judge issued an initial decision

---

[2] The appellant appealed his removal to the Board, and the appeal settled. *Felten v. Department of Veterans Affairs*, MSPB Docket No. DA-0714-18-0357-I-1, Initial Appeal File, Tabs 1, 7.

[3] There is no obvious link between the appellant's osteoarthritis and the substance of his disability retirement claim, which appears to be based entirely on mental health conditions.

affirming OPM's final decision. IAF, Tab 29, Initial Decision (ID) at 1, 10. Considering the available medical and performance-related evidence, the administrative judge found that the appellant failed to show that his psychological conditions prevented him from rendering useful and efficient service prior to his May 18, 2018 removal. ID at 4-9.

The appellant has filed a petition for review, disputing the administrative judge's interpretation of the facts and arguing that his claimed conditions resulted in performance, conduct, and attendance deficiencies and were incompatible with useful and efficient service as an Accountant. Petition for Review (PFR) File, Tab 1 at 14-24. He also argues that accommodation in his position was unreasonable. *Id*. at 24-25. OPM has responded to the petition for review, and the appellant has replied to OPM's response. PFR File, Tabs 3-4.

## ANALYSIS

In an appeal from an OPM decision on a voluntary disability retirement application, the appellant bears the burden of proof by preponderant evidence. *Thorne v. Office of Personnel Management*, 105 M.S.P.R. 171, ¶ 5 (2007); 5 C.F.R. § 1201.56(b)(2)(ii). To be eligible for a disability retirement annuity under FERS, an employee must show the following: (1) he completed at least 18 months of creditable civilian service; (2) while employed in a position subject to FERS, he became disabled because of a medical condition, resulting in a deficiency in performance, conduct, or attendance, or, if there is no such deficiency, the disabling medical condition is incompatible with either useful and efficient service or retention in the position; (3) the condition is expected to continue for at least 1 year from the date that the application for disability retirement benefits was filed; (4) accommodation of the disabling medical condition in the position held must be unreasonable; and (5) he did not decline a reasonable offer of reassignment to a vacant position. 5 U.S.C. § 8451(a); *Thorne*, 105 M.S.P.R. 171, ¶ 5; 5 C.F.R. § 844.103(a).

The administrative judge found, and the parties do not dispute on review, that the appellant met the 18-month service requirement under FERS at the time he filed his application on December 10, 2018, that his conditions were expected to continue for 1 year from that date, and that he did not decline a reasonable offer of reassignment to a vacant position. ID at 4; IAF, Tab 24 at 12-13, 18; Tab 23 at 6-7; Tab 26 at 5, 8. We decline to disturb those findings. Thus, the appellant's entitlement to a disability retirement annuity depends on whether he had a disabling medical condition and whether accommodating that condition was unreasonable. *Thorne*, 105 M.S.P.R. 171, ¶ 5.

There are two ways to meet the statutory requirement that the employee "be unable, because of disease or injury, to render useful and efficient service in the employee's position." *Jackson v. Office of Personnel Management*, 118 M.S.P.R. 6, ¶¶ 6-7 (2012) (quoting 5 U.S.C. §§ 8337(a), 8451(a)(1)(B)). First, an appellant can establish that the medical condition caused a deficiency in performance, attendance, or conduct by showing that his medical condition affects his ability to perform specific work requirements, prevents him from being regular in attendance, or causes him to act inappropriately. *Id.*, ¶¶ 7-8. Alternatively, the employee can show that his medical condition is incompatible with either useful and efficient service or retention in the position by showing that it is inconsistent with working in general, in a particular line of work, or in a particular type of setting. *Id.*

The appellant established that his medical conditions caused a deficiency in performance, attendance, or conduct.

As found by the administrative judge, the appellant's performance and attendance deficiencies became unacceptable around October 2017. ID at 7; IAF, Tab 13 at 9. However, the administrative judge found that the appellant failed to demonstrate that his claimed conditions caused the deficiencies in his performance and attendance, or that the conditions were incompatible with useful and efficient service. ID at 5-10. Given the totality of the evidence, we find that

the appellant has established a causal link between the deficiencies in his performance and attendance and his claimed conditions.

Although objective medical evidence must be considered, such evidence is not required to establish disability. *Confer v. Office of Personnel Management*, 111 M.S.P.R. 419, ¶ 9 (2009) (citing *Vanieken-Ryals v. Office of Personnel Management*, 508 F.3d 1034, 1040-42 (Fed. Cir. 2007)). The Board will consider all pertinent evidence in determining an appellant's entitlement to disability retirement, including objective clinical findings, diagnoses and medical opinions, subjective evidence of pain and disability, and evidence relating to the effect of the applicant's conditions on his ability to perform the duties of his position. *Henderson v. Office of Personnel Management*, 117 M.S.P.R. 313, ¶ 19 (2012). Nothing in the law mandates that a single provider tie all of this evidence together. *Id*. For example, if the medical provider sets forth clinical findings, a diagnosis, and a description of how the medical condition affects the appellant's activities in general terms, the Board could consider that evidence, together with the appellant's subjective account of how the condition has affected his ability to do his job and his daily life; testimony or statements from supervisors, coworkers, family members, and friends; and the appellant's position description to conclude the appellant's medical conditions were disabling. *Id*.

On review, the appellant argues that a May 26, 2020 report from his Licensed Professional Counselor (LPC), as well the information in his own declaration, establishes the relationship between his mental health conditions and his service deficiencies. PFR File, Tab 1 at 12-14, 17-21. In particular, the appellant's LPC explained that the appellant "struggled immensely with []his position in the months leading up to his removal," including his "inability to concentrate . . . severe mood swings and suicidal ideation." IAF, Tab 24 at 26. The LPC also stated that he developed "serious problems with his sleep, which only increased the severity of his mental conditions" and that "his supervisor removed almost all responsibilities from [the appellant] stating that [he] had

become unreliable for many tasks, including being on time to meetings," which she found "greatly worsened [the appellant's] conditions and ability to cope with life." *Id*. She further explained that the appellant's medical conditions "severely affected him from functioning in almost every facet of life [and the appellant] was unable to effectively manage his personal or professional life in any way in the months leading up to his removal in May 2018." *Id*. at 27. She concluded that the appellant continues to suffer from these conditions and could not perform the essential functions of his position or "employment of any kind." *Id*. at 28.

Although not contemporaneous, we nevertheless find the May 26, 2020 LPC report to be persuasive for several reasons. First, we agree with the appellant that the LPC's regular and longstanding counseling relationship with him, over a period of more than 5 years, adds to the persuasiveness of her opinion. *See Tan-Gatue v. Office of Personnel Management*, 90 M.S.P.R. 116, ¶ 11 (2001) (observing that medical conclusions based on a long familiarity with a patient are of greater weight than those based on a brief association or single examination), *aff'd per curiam*, 52 F. App'x 511 (Fed. Cir. 2002). In addition, the LPC's report is lengthy and detailed, providing reasoned explanations for her conclusions. IAF, Tab 24 at 24-28; *see Bahm v. Department of the Air Force*, 38 M.S.P.R. 627, 632 (1988) (finding that the presence of a reasoned explanation, as opposed to a mere conclusory assertion, increases the probative value of a medical opinion).

Furthermore, our reviewing court has held that post-separation evidence of an appellant's medical condition may be probative of whether the appellant became disabled while serving in a covered position "[w]here proximity in time, lay testimony, or some other evidence provides the requisite link to the relevant period." *Reilly v. Office of Personnel Management*, 571 F.3d 1372, 1380-82 (Fed. Cir. 2009). Here, the appellant also provided his own declaration linking his worsening mental conditions to the period of time when he was separated. IAF, Tab 24 at 19-23. For example, the appellant explained that his medical

conditions affected his ability to "concentrate on tasks because of lack of sleep," "decreased . . . energy and self-esteem," and that he was experiencing "intrusive thoughts about failing" and was "continually . . . distracted by thoughts of inadequacy and incompetence." *Id*. at 19. As a result, in his last year of his employment, particularly after October 2017, he began to forget meetings, and would "make mistakes on budget projections, including revenue and expense forecasts, and leave out necessary details during budget execution that management required for policy and managerial decision-making," which in turn caused his depression to worsen. *Id*. He also stated that he was even "failing at simple tasks" such as staying on task, multi-tasking, speaking to people over the phone, and responding to emails, which resulted in his supervisor removing him from the IT Contractor Budget project and removing all his duties, leaving him with "nothing to work on or do." *Id*. at 19-20. Finally, he explained that between October 2017 and his removal, he "regularly" took scheduled and unscheduled leave for biweekly appointments with his LPC and noted, "[t]here were periods where [he] called in for 4-5 days at a time because [he] could not get out of bed." *Id*. at 20.

Finally, although the Board has held that an appellant's application for disability retirement in the face of an impending removal for misconduct may cast doubt on the veracity of his application; it is not fatal to eligibility. *Henderson v. Office of Personnel Management*, 109 M.S.P.R. 529, ¶¶ 2-3, 9, 21 (2008) (finding that the appellant established an entitlement to disability retirement despite the suspicious timing of his application, which he submitted while he was indefinitely suspended pending the outcome of a criminal charge of marijuana distribution); *see also Anderson v. Office of Personnel Management*, 96 M.S.P.R. 299, ¶ 22 (2004) (recognizing that an individual's failure to apply for disability retirement until she is removed is a factor discounting the force of the application), *aff'd per curiam*, 120 F. App'x 320 (Fed. Cir. 2005). As established above, the appellant's service deficiencies became unacceptable around October 2017, which is before

the agency learned about the appellant's conviction and proposed the appellant's removal in March 2018. IAF, Tab 6 at 66, Tab 13 at 33, Tab 24 at 31-34. This timing, coupled with the appellant's medical evidence and subjective report establishing that his medical conditions caused his service deficiencies, outweigh any doubt that the appellant may have applied for disability retirement benefits merely in an effort to cast his misconduct and removal in a different light. IAF, Tab 24 at 19-28; *see Henderson*, 109 M.S.P.R. 529, ¶ 21 (determining that although the timing of an appellant's disability retirement application was suspect, he presented overwhelming medical evidence that corroborated his subjective complaints and established that his medical condition was incompatible with either useful and efficient service or retention in his former position).

In conclusion, we find that the appellant has established that his mental health conditions caused deficiencies in his performance and attendance. Accordingly, we need not consider his remaining arguments that his mental health conditions caused his off-duty misconduct for which he was ultimately removed and that they were incompatible with any form of employment. PFR File, Tab 1 at 7-8, 15-18, 20-21.

The appellant established that accommodation of the disabling medical condition is unreasonable.

Having found that the appellant established that he was disabled from providing useful and efficient service in his Accountant position, we next consider his claim that his conditions could not be accommodated. PFR File, Tab 1 at 24-25. The administrative judge made no findings as to whether accommodation of the appellant was unreasonable.

When an agency certification that accommodation is unavailable is unrebutted and the record supports the conclusion that accommodation would not be possible, the Board has held that this criterion for obtaining disability retirement is met. *Chavez v. Office of Personnel Management*, 111 M.S.P.R. 69,

¶ 15 (2009). Here, the DVA indicated that no reasonable accommodation efforts were made because the appellant was removed. IAF, Tab 6 at 63. However, in discussing the critical elements of the appellant's position that he could no longer successfully perform, the appellant's supervisor observed that eventually he "was not able to assign any tasks to [the appellant]." *Id*. at 66. Moreover, the appellant and his LPC concluded that the appellant's medical conditions prevented him from performing any duties, including the essential functions of his job. IAF, Tab 24 at 21-22, 28. Based on the DVA's unrebutted belief that the appellant could not be provided with a reasonable accommodation to perform his duties and the evidence of record that the appellant's medical conditions prevented him from performing his job duties, we find that the appellant met his burden to prove that he could not be reasonably accommodated in his position of record.

Accordingly, we REVERSE the administrative judge's initial decision and OPM's final decision.

**ORDER**

We ORDER OPM to grant the appellant disability retirement. OPM must complete this action no later than 20 days after the date of this decision.

We also ORDER OPM to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order. We ORDER the appellant to provide all necessary information OPM requests to help it carry out the Board's Order. The appellant, if not notified, should ask OPM about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after OPM tells the appellant it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that OPM did not fully carry out the Board's Order. The petition should contain

specific reasons why the appellant believes OPM has not fully carried out the Board's Order, and should include the dates and results of any communications with OPM. *See* 5 C.F.R. § 1201.182(a).

This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[4]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all

---

[4] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative receives</u> this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[5] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[5] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD: _____
                Gina K. Grippando
                Clerk of the Board

Washington, D.C.